IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HEALTHFLEET AMBULANCE, INC.,** Plaintiff, | **CIVIL ACTION** |
| v. | |
| **MARKEL INSURANCE COMPANY,** Defendants. | **NO. 20-2250** |

## MEMORANDUM OPINION

Plaintiff Healthfleet Ambulance, Inc. alleges that its insurer, Markel Insurance Company, breached its contract with Healthfleet by failing to properly investigate a claim against it and by settling that same claim in bad faith. Markel moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Healthfleet's Complaint. For the reasons that follow, Markel's motion will be granted.

I.   **BACKGROUND**[1]

In August 2015, George Miller, a patient traveling in a Healthfleet ambulance, was injured when a restraint in the ambulance malfunctioned, "causing [his] head to violently come into contact with the van's interior." The incident was promptly reported to Markel. Nearly two years later, Miller served a writ of summons against Healthfleet in state court. Then, on July 5, 2017, no complaint having been filed and no attorney having entered an appearance on behalf of Healthfleet, Markel unilaterally settled Miller's claim against Healthfleet for $995,000—just $5,000 shy of Healthfleet's $1,000,000 policy limit. Healthfleet alleges that, prior to this settlement, it "had no substantive contact from [Markel], either through an independent claims

---

[1] The following facts are drawn from Plaintiff's Amended Complaint and, for purposes of this motion to dismiss, are taken as true. *See Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

adjuster employed by [Markel] or from any attorney hired by [Markel] to protect Healthfleet's interest" with respect to the Miller case. It also alleges that Markel conducted no discovery and made no attempt to determine whether another party—such as the manufacturer of the malfunctioning restraint—could be liable for Miller's injuries.

In February 2018, Healthfleet sued Markel in state court in connection with the Miller settlement. Healthfleet ultimately dismissed that case, but filed a writ of summons against Markel in August 2019 in a different county. Then, in January 2020, Healthfleet filed a complaint in that case, claiming Markel had settled with Miller in bad faith. In an amended complaint filed in April 7, 2020, Healthfleet further alleged that "Defendant's conduct has caused monetary damages to Plaintiff in excess of Two Hundred Thousand Dollars in increased premiums to date." Markel removed, and Healthfleet filed an Amended Complaint on June 1, 2020, bringing claims for both bad faith and breach of contract. Markel now moves to dismiss those claims.

## II.  DISCUSSION[2]

As a threshold matter, Markel argues that Healthfleet's bad faith claim is barred by the statute of limitations. Because Healthfleet learned of Markel's settlement in July 2017 but did not bring the suit at issue until August 2019, Markel argues Healthfleet's suit is barred by the two-year statute of limitations applicable to Pennsylvania's bad faith insurance statute, 42 Pa. § 8371. Healthfleet disagrees, arguing that its cause of action against Markel did not accrue in July

---

[2] "To survive a motion to dismiss [pursuant to Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining the adequacy of a complaint, the Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to plaintiff." *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011). The Court may also consider exhibits attached to the complaint—such as a contract in a breach of contract action—on a motion to dismiss. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

2017, when it was notified of the settlement, but rather "when actual damages bec[a]me apparent"—which it implies occurred sometime after the settlement itself.

Pennsylvania law[3] recognizes "two separate 'bad faith' claims that an insured can bring against an insurer: a contract claim for breach of the implied contractual duty to act in good faith, and a statutory bad faith tort claim under 42 Pa. Cons. Stat. Ann. Section 8371." *Tubman v. USAA Cas. Ins. Co.*, 943 F. Supp.2d 525, 529 (E.D. Pa. 2013) (citing *Birth Ctr. v. St. Paul Cos., Inc.*, 567 Pa. 386, 409 (2001) (Nigro, J. concurring)).  Because "Pennsylvania courts have held that the common law duty of good faith and fair dealing is implied in every contract," such contractual bad faith claims are a species of breach of contract claim and cannot exist separate and apart from a breach of contract claim.  *See Pommells v. State Farm Ins.*, 2019 WL 2339992, at *6 (E.D. Pa. June 3, 2019) (collecting cases).  Therefore, while *statutory* bad faith claim are subject to a two-year statute of limitations, *contractual* bad faith claims are subject to the four-year statute of limitations applicable to breach of contract claims generally.  *See Haugh v. Allstate Ins. Co.*, 322 F.3d 227, 237 (3d Cir. 2003).[4]

Here, Healthfleet brings a contractual rather than statutory bad faith claim.  Nowhere in

---

[3] This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), as Healthfleet is a citizen of Pennsylvania, Markel is a citizen of Illinois, and the amount in controversy exceeds $75,000.  As a federal court sitting in diversity, the substantive law of the forum state applies.  *See Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)) (stating that courts sitting in diversity apply substantive state law).

[4] Markel argues that Healthfleet "cannot cast its statutory bad faith claim as a common law claim (subject to a four-year statute of limitations under 42 Pa.C.S. §5525) because Pennsylvania courts refuse to allow a common law 'bad faith' claim in the first party insurance claim setting."  However, that statement misrepresents Pennsylvania law.  While Pennsylvania does not recognize a cause of action for bad faith sounding in *tort*, Pennsylvania does recognize bad faith in the context of an insurance contract dispute, albeit as the basis for a breach of contract claim rather than as a freestanding claim.  *See Zaloga v. Provident Life & Acc. Ins. Co. of Am.*, 671 F. Supp.2d 623, 631 (M.D. Pa. 2009)  (explaining that defendant insurer who argued "that a common law action for bad faith does not exist in Pennsylvania law or does not exist for first party claims" was "miss[ing] the difference between actions arising out of contract versus tort law").

its pleadings does Healthfleet mention or reference Section 8371.  Rather, Healthfleet's Complaint states that Markel's "conduct as aforestated [*i.e.*, as stated in its breach of contract claim] constitutes bad faith," suggesting that Healthfleet is alleging that Markel acted in bad faith by breaching its contractual duty to act in good faith.  Because "a breach of contract claim and a separate bad faith claim cannot be based on the same underlying conduct," Healthfleet's bad faith claim "merges" with its breach of contract claim, *Slamon v. Carrizo (Marcellus) LLC*, 2017 WL 3877856, at *9 (M.D. Pa. Sept. 5, 2017); what remains is a breach of contract claim apparently premised on the breach of the implied contractual duty to act in good faith, subject to a four-year statute of limitations, *see Haugh*, 322 F.3d at 237.  Consequently, the date "when damages become apparent" is immaterial in this case, as, even assuming Healthfleet's cause of action did accrue in July 2017, that date would be well within the four-year statute of limitations period applicable here.

Markel argues that even if Healthfleet's claims are timely, they are not sufficiently plead and, for that reason, must be dismissed.  Its argument is that it cannot have acted wrongfully by settling with Miller because the language of the policy allowed it to "settle any claim of 'suit' as [Markel] consider[ed] appropriate."  Healthfleet dismisses Markel's argument as "absurd," though it admits the policy contained this permissive language.  "Although this language sets the bar very low for the carrier," Healthfleet asserts—without citing either to the policy or to caselaw to support its position—"surely the carrier must undertake some basic steps to process each claim properly."

Pennsylvania law disafavors bad faith claims where a policy grants the insurer discretion to settle and where such settlement is within policy limits.  *See Step Plan Servs., Inc. v. Koresko*, 12 A.3d 401, 419 (Pa. Super. 2010) ("In meeting its contractual obligations, an insurer can

generally settle the claim on the insured's behalf, even without the insured's consent, if the policy so provides."). However, "in limited circumstances," "a claim for bad faith may . . . be asserted against the insurance company notwithstanding a 'deems expedient' provision[5]. . . if such settlement was contrary to the intent and expectation of the parties." *Bleday v. OUM Group*, 435 Pa. Super. 395, 399 (1994) (emphasis added). In *Bleday*, plaintiff-physician sued his insurance company for settling a malpractice claim within policy limits, on the basis that such settlement would "subject[] him to increased insurance premiums, loss of earnings, and harm to reputation." *Id.* at 398. Though the *Bleday* court "l[eft] for another day" what circumstances would constitute bad faith where a policy contained a "deemed expedient" clause, the court denied plaintiff's claim on the basis that there was no evidence the parties had not freely negotiated the policy terms. *Id.* at 403. The Third Circuit has likewise interpreted such "deems expedient" clauses broadly—so broadly as to allow insurers to settle claims subject to such clauses "for nuisance value of the claim" or even where a "suit . . . presents no valid claim against the defendants." *Caplan*, 68 F.3d at 837.

Here, there is no contention that the "deems expedient" clause was not freely negotiated. And, in light of *Caplan*, even if Healthfleet could have done more to investigate Miller's claim, the "deems expedient" clause in its policy afforded Markel the option of settling with Miller simply because it preferred settlement over further investigation of his claim. *See id.*

Accordingly, Healthfleet has failed to state a claim for relied, Markel's motion must be

---

[5] Though Healthfleet's policy does not contain the actual phrase "deems expedient," "[a] policy provision that the insurer may settle a suit it 'deems expedient' is similar to the 'settle when appropriate' provision found here." *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 837 n.5 (3d Cir. 1995).

granted and Healthfleet's motion will be dismissed with prejudice.[6]

An appropriate order follows.

**July 22nd, 2020**                                            **BY THE COURT:**

                                                                                                  **/s/Wendy Beetlestone, J.**

                                                                                                    **WENDY BEETLESTONE, J.**

---

[6] Healthfleet argues that it should be allowed to file a third amended complaint if the Court finds its current pleadings deficient.  Here, however, further amendment would be futile.  *See Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983) ("Amendments, although liberally granted, rest within the sound discretion of the trial court under Fed.R.Civ.P. 15. The trial court may properly deny leave to amend where the amendment would not withstand a motion to dismiss.").